No. 39,232

CORA M. NORTON MORRISON, *Appellant*, v. MAMIE NORTON
LAUNTZHISER, et al., *Appellees*.

(271 P. 2d 301)

Opinion filed June
12, 1954.

*John J. McCurdy*, of Lincoln, and *Richard M. Driscoll*, and *Jerry E. Driscoll*,
both of Russell, were all on the briefs for the appellant.

*W. S. Norris* and *H. L. Smither*, both of Salina, were on the briefs for the
appellees.

The opinion of the court was delivered by

PARKER, J.: This is a controversy between a wife and children
over the estate of a deceased husband and father in which all
parties are dissatisfied with the decision of the trial court. The
plaintiff appeals and the defendants cross appeal.

John G. Norton, a resident of Lincoln County, Kansas, died testate
on March 23, 1937. On the date of his death he was the owner
of five quarter sections and an eighty-acre tract of real estate, also
personal property of the approximate value of $2,500. All of his
real estate was clear except the Northwest Quarter of Section 17,
Township 10, Range 10 in Lincoln County which was encumbered
by a mortgage of $4,000, executed in 1930 by the testator and his
wife Cora, the plaintiff herein, on which $3,000 of the principal plus
unpaid interest amounting to $500 was either past due or remained
to be paid.

For present purposes, except to note that it made ample provision
for division of such of his real estate and personal property, as
remained unsold on the date of the death of his wife among three
persons, *i. e.*, a daughter, a son and a stepson, all that need be said

respecting the will is that it appointed Cora as executrix with the common directive that his just debts be paid, and contained the following terms:

"SECOND: I give, devise and bequeath to my beloved wife, Cora Norton, a life estate in all of my real property with full authority to lease, occupy or hold the same and to have as her personal property all rents derived from said real estate during her lifetime with full authority to sell, transfer and deliver good title to any portion of said land necessary for the payment of any debt on said land at the time of my death.

"THIRD: I give, devise and bequeath to my beloved wife all of my personal property wherever situated with full authority to sell, convey, call in, collect and convert the same into money, with power in her discretion to postpone such sale, conveyance, calling in and conversion; and after payment therefrom from my debts, funeral expense and expense of administration, to invest the residue of such moneys in her name in any of the investments authorized by law and to stand possessed of such investments and of all parts of my personal property for the time being unsold with full authority to use any part of the proceeds or principal necessary for her own personal benefit and that she be not required to make an accounting of any of the personal property above mentioned to any Court, administrator or other officer of the law, but that said personal property be for her own personal benefit and support, or such amount as may be necessary.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"FIFTH: It is my intention in this will to give to my beloved wife, Cora Norton, all of my property of every kind, both real and personal, and that she have the full benefit of all profits derived from said property during her lifetime; and that at her death said property be divided as set forth in paragraph four; that in the event it becomes necessary for said Cora Norton to sell any of said real estate to pay any indebtedness on said land existing at the time of my death, I hereby give said Cora Norton the right to sell any portion of said real estate. In the event there is no lien or loan against said property at the time of my death, I direct that said property be held intact by said Cora Norton until her death, then the same to be divided as mentioned in paragraph four."

The foregoing will was filed for record and admitted to probate in the probate court of Lincoln County shortly after the death of the testator. Pursuant to its direction Cora Norton was appointed executrix and proceeded with administration of the estate.

We shall not here detail receipts and disbursements of the estate as shown by reports made to the probate court by the executrix. For purposes essential to the appeal it suffices to say that, among other things, during the course of its administration the executrix paid $1,000 on the principal remaining unpaid on the heretofore mentioned mortgage, paid $594.44 for interest due and unpaid on that obligation up to and including July 10, 1937, and perhaps

another payment of interest amounting to $60; also that she paid herself, pursuant to the order of the probate court, the sum of $524.52 as a widow's allowance; that all of such sums were paid from funds realized from the sale of personal property left by the testator or from the sale of crops growing on the real estate at the time of his death and sold subsequently thereto; that all of the amounts so paid were included in the final report made by the executrix on April 14, 1938, which report was approved by the probate court on that date under a final order and judgment discharging her as executrix of the estate and specifically reciting that "It is by the Court considered and ordered that said report and account of said Executrix be and the same are, approved. . . ."

Following her discharge on April 14, 1938, on which date the sum of $2,000 remained unpaid on the principal of the real estate mortgage, Cora, as the owner of all personal property and the owner of a life estate in the real estate, left by her deceased husband, took full possession and control of all such property. She leased the real estate to Fred Norton, her deceased husband's stepson, and from that time on received all rentals accruing therefrom. Out of funds received from that source and perhaps other money, realized from the personal estate of her husband and paid to her at the time of her discharge as executrix, she paid interest accruing on the unpaid principal of the mortgage until March 23, 1948. On that date, due to a threatened foreclosure of such mortgage and in order to preserve her life estate and the fee in such real estate, she paid the holder of the mortgage $1,000 on the principal remaining due under its terms. Subsequently, and on July 20, 1949, she paid the balance of the principal, namely, $1,000, together with all interest due on that date. Thereafter the owner and holder of such mortgage endorsed receipts of all payments made on that instrument, released it of record, and delivered it to Cora as fully paid and satisfied.

The record discloses surprisingly little friction among the parties in the interim between Mr. Norton's death and the date on which his widow made the final payments on the mortgage. Nor does it affirmatively appear certain that friction existed thereafter. However, it seems certain that something happened to disturb their theretofore harmonious relationship at that time. Perhaps it was the fact that thereabouts Mrs. Norton married again and became Mrs. Cora M. Norton Morrison. In any event some two years after such marriage she commenced the instant action by that name as

plaintiff by the filing of a petition, subsequently amended by virtue of a ruling on a motion to make that pleading more definite and certain, wherein she named all the residuary legatees and devisees of Mr. Norton together with their respective spouses as defendants and, after detailing all payments of interest and principal made by her on the real-estate mortgage, including those made by her as executrix, asserted that she was entitled to be reimbursed for such payments and prayed for judgment construing the will to permit such recovery; that upon construction thereof she be adjudged to be the holder of a lien against the real estate belonging to the estate for the sum total of all payments made by her on the mortgage together with interest thereon in the approximate amount of $6,807 with interest from July 1948; that she be authorized to sell one of the tracts of real estate, not encumbered on the date of the death of her prior husband, to satisfy the amount of such lien; that from the proceeds of such sale the amount of her claim be satisfied with interest from July 1948, and costs; that she have such other further relief as she might be entitled to in equity; that in addition she have relief in the nature of a declaratory judgment decreeing that the terms of the will when construed entitled her to recover all relief prayed for.

In response to the petition as amended the defendants filed an answer and cross petition. In their answer they denied each and every allegation of plaintiff's pleading, except the existence of the will and that it had been duly probated and plaintiff had elected to take under its terms. In addition they asserted the testator possessed more than enough personal property on the date of his death to liquidate all of his indebtedness, including the mortgage in question, which property came into the hands of the plaintiff and should have been used by her to pay all principal and interest due and unpaid on the mortgage on the date of the death of such decedent and prayed that the relief sought by plaintiff be denied and they recover judgment for the costs of the action. By cross petition they set forth certain facts which they alleged entitled them to an order restraining plaintiff from removing certain buildings from one of the quarter sections left them by the testator subject to the plaintiff's life estate. However, so far as the record discloses, questions with respect to that issue do not appear to have been pursued in district court. In any event they are neither abstracted nor briefed and hence require no further consideration or mention.

The reply filed by plaintiff to the defendants' pleading consisted of a general denial of all allegations inconsistent with her claim and a request for judgment as prayed for in her amended petition.

With issues joined as related the case came on for trial by the court. After plaintiff had adduced her evidence, and without stating the grounds on which they based their action, defendants demurred to such evidence and moved for judgment thereon. Upon the overruling of this demurrer and motion defendants adduced their evidence. Thereafter each party requested findings of fact and conclusions of law. The record fails to disclose whether these requested findings were refused or denied but does show that subsequently the trial court made its own findings of fact and conclusions of law which are incorporated in the journal entry of judgment. This journal entry, without stating any definite amount, recites that judgment was rendered in conformity with such findings and conclusions and the costs taxed to the defendants.

Following the rendition of judgment, as heretofore indicated, plaintiff filed a motion to set aside four of the findings of fact and a separate motion to set aside fifteen of the trial court's conclusions of law. When these motions were overruled she filed a motion for new trial. Not to be outdone the defendants did likewise. When these motions were overruled plaintiff perfected the instant appeal. Thereupon defendants gave notice of a cross-appeal.

In briefs filed in this court appellant specifies twelve errors and appellees assign six errors as grounds for reversal of the judgment.

It would serve no useful purpose to detail the evidence of record which, it may be stated, is sufficient to sustain the factual statement heretofore made, and for that matter, the factual findings of the trial court. Neither would it add anything to this opinion to labor the twenty-three extended findings of fact made by that tribunal or its twenty voluminous conclusions of law. Nor would it be of benefit to the bench and bar of this state to relate at length the specifications of error raised by the parties on appellate review. It suffices to say that when carefully analyzed the evidence, the trial court's findings and conclusions of law, and the parties' specifications of error all make it apparent the two fundamental questions involved in this lawsuit are: (1) Whether the last will and testament of John Norton is to be construed as requiring the appellant, either as executrix or as an individual, to pay the encumbrance, existing on the Northwest Quarter of Section 17, Township 10, Range

7, on the date of his death, out of funds accruing from the sale of personal property belonging to his estate and/or from funds acquired by her from rentals on real estate in which she had a life estate; and (2) if not, whether appellant is entitled to recover judgment for money paid by her on such indebtedness under conditions and circumstances heretofore described.

As indicated decision of the first question above mentioned depends upon the import to be given heretofore quoted portions of the will, which we pause to note was executed approximately five months prior to Mr. Norton's death. Resort to that instrument, particularly the third paragraph thereof, discloses clear and unequivocal language expressing the testator's intention to give appellant (his widow), subject only to payment of debts, funeral expense, and expenses of administration, whatever portion of his personal property might be necessary for her personal benefit and support during her lifetime with full power on her part to sell any and all of such personal property without accounting for the proceeds received therefrom to any court, administrator, or any other officer of the law. When read in the light of the second and fifth paragraphs of the will, providing for the sale of his real estate to pay any indebtedness existing thereon at the time of his death, we have no trouble in reaching a conclusion the directive of the third paragraph respecting the payment of debts had reference to debts which were not secured by a lien on his real estate. We have even less trouble when it is remembered the testator was bound to know, on the date of the making of his will, that his clearly expressed intention to leave his personal property for his wife's benefit and support would be completely nullified if it were sold to pay liens existing on his real estate because the proceeds thereof if sold would have been less than such indebtedness and if they had been so applied would leave no personal property or proceeds derived therefrom for the use, support or personal benefit of his wife. There is, of course, no need for interpretation of the second paragraph of the will so far as it relates to income from the devised life estate. Such paragraph provides, in language so direct, clear and certain that there can be no question respecting its meaning, that appellant was to receive and hold as her own personal property all rents derived from the real estate during her lifetime. Based on the foregoing construction we are forced to hold the will did not require the appellant to pay liens existing on the involved real estate

out of funds acquired from rents derived therefrom or out of money realized from the sale of personal property owned by the testator on the date of his death.

Turning to the second question we have little difficulty in concluding, particularly when it is kept in mind they were made to forestall foreclosure and the will gave her the right to sell the mortgaged real estate to accomplish that result, that appellant should be reimbursed for the two $1,000 payments of principal made in March and July of 1948 for the purpose of preventing foreclosure of the existing mortgage on the Northwest Quarter of Section 17 and that she is entitled to a lien on such property for the amounts so paid. However, we are unable to agree with her contentions she is entitled to payments of principal and interest made during the course of the administration of the estate and interest paid between the date of her discharge as executrix and the date of the release of the mortgage. With respect to payments of the first type she elected to pay them out of funds derived from the sale of the personal property belonging to her deceased husband. She reported those payments as having been made out of assets of the estate, procured judicial approval of her final account, permitted such estate to be closed, and accepted her discharge as executrix without having made any claim against the estate for personal funds advanced by her for its benefit. Under such circumstances she cannot now, some sixteen years after the estate has been closed, be heard to say she has a claim against it and repudiate proceedings had in the probate court to which she was a party and in which she acquiesced. As to the second we think that under the terms of the will appellant was obligated to promptly determine whether it was going to be necessary to sell any of the real estate in order to pay off the mortgage lien and if so proceed to sell it within a reasonable time. Having failed to do so and thus obtained benefits from the unsold property, which she would not otherwise have obtained, it would be unjust and inequitable to reimburse her for interest paid on the mortgage from 1938 to 1948. By the same token it would be equally unjust and inequitable to hold, as appellees contend, that appellant is not entitled to be reimbursed for the sum total of the last two payments made on the principal of the mortgage. The will gave her the right to sell the mortgaged property for that purpose and by holding she has a lien thereon for the amount so paid and, if not otherwise reimbursed, that it

shall be sold to pay that amount appellees will lose no more than they would have lost if it had been sold in strict conformance with the terms of such instrument. Nor do we agree, as appellees contend and for that matter as the trial court held, that appellant is now chargeable with any excessive award in the form of a widow's allowance made by the probate court in its 1938 decree of final settlement. Assuming arguendo such award was excessive the judgment of the probate court has long been final and is *res judicata.*

Based on what has been heretofore stated and held, and after careful consideration of all arguments advanced by counsel for the parties regarding their respective rights under the confronting facts and circumstances, we have concluded the appellant should be reimbursed in the sum of $2,000 for payments of principal made on the mortgage in March and July 1948. Since that sum is in excess of the amount allowed by the trial court its judgment should be reversed to that extent with directions to increase the amount of its award accordingly and it is so ordered. We find nothing wrong with, and therefore approve, other provisions of its judgment decreeing the amount due and reimbursable to be a lien on the involved real estate and directing a sale thereof in the manner therein set forth to satisfy such lien and the costs of the action in the event the amount of such lien is not satisfied by the appellees prior to the initiation of the sale proceedings.

In accord with the views herein expressed the judgment is affirmed in part and reversed in part.